UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 1:24-CV-1351 |
| ) | |
| RESURGENT CAPITAL SERVICES, L.P. ) | Judge Kennelly |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Defendant Resurgent Capital Services, L.P. ("Defendant"), by and through its undersigned attorneys, hereby replies in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and states as follows:

**INTRODUCTION**

§1692c(a)(1) places limits on when and where a debt collector may communicate with a consumer, specifically prohibiting communications "at any unusual time or place or a time or place known, or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a). Plaintiff filed suit alleging Defendant had violated the Fair Debt Collections Practice Act ("FDCPA") at 15 U.S.C. §1692c(a)(1) "by communicating with Plaintiff via letter after receiving notice that Plaintiff could only be contacted via email." Defendant moved to dismiss on the basis that it did not communicate at any unusual time or place or in an inconvenient place. Plaintiff's response does not save his claims. Recent case law agrees that Plaintiff's claim is about the medium of communication and thus, plaintiff's allegations fail to state a claim under the FDCPA. Therefore, Plaintiff's complaint must be dismissed.

1

**ARGUMENT**

I. **DEFENDANT DID NOT COMMUNICATE WITH PLAINTIFF AT AN UNUSUAL TIME OR PLACE OR AN INCONVENIENT PLACE**

In two recent cases, courts have determined that FDCPA claims identical to Plaintiff's claim have failed to state a legal cause of action under the FDCPA, such that those other claims were dismissed. In *Marks v. Javitch Block LLC*, No. 1:23-CV-431-MJT-CLS, 2024 U.S. Dist. LEXIS 45737, at *5 (E.D. Tex. Mar. 14, 2024), the court stated:

> the FDCPA defines communication as "the conveying of information regarding a debt directly or indirectly to any person *through any medium*." 15 U.S.C. §1692a(2) (emphasis added). Accordingly, the FDCPA distinguishes between a preference in medium and a consumer's right to not be contacted at a time or place known to be inconvenient. *See, e.g.*, *Belcher v. Glob. Tr. Mgmt. LLC*, No. 4:19-CV-711-Y, 2020 WL 13429983, at *2 (N.D. Tex. May 14, 2020) (finding a consumer had a right under 15 U.S.C. §1692c(a)(1) to request a debt collector not contact her at work); *Chapin v. Credit Control Servs. Inc.*, No. 4:18-CV-00996, 2020 U.S. Dist. LEXIS 69262, 2020 WL 1898340 (S.D. Tex. Feb. 11, 2020) (finding a consumer had a right to not be contacted at work during typical work hours under 15 U.S.C. §1692c(a)(1)). After review of the record, the Court finds Plaintiff failed to plead the letter at issue was received at an inconvenient time or place.

The court adopted the magistrate judge's decision which found that request for only email communication took issue with the medium of communication instead of the time or place of communication, as that court wrote in its opinion granting the motion to dismiss:

> First, Plaintiff did not plead he was contacted at an inconvenient time or place as required under 15 U.S.C. §1692c(a)(1). Plaintiff's October 30, 2023, letter implies all non-email communication are inconvenient, regardless of the time and place that email is received. (Doc. #5-3.) **Plaintiff does not allege that he would find receiving an email at his home at the same time the letter was received at his home to be inconvenient, meaning his dispute is with the chosen medium of the communication**. Notably, the FDCPA defines communication as "the conveying of information regarding a debt directly or indirectly to any person *through any medium*." 15 U.S.C. §1692a(2) (emphasis added). Plaintiff's preference for email communication, therefore, falls outside the scope of his right to limit

2

the time and place of communications from the debt collector under the FDCPA and the caselaw of this circuit.

*Marks v. Javitch Block LLC*, No. 1:23-CV-431-MJT-CLS, 2024 U.S. Dist. LEXIS 36711, at *8-9 (E.D. Tex. Feb. 27, 2024) (emphasis added). Similarly, another court found the same:

> Here, Plaintiff simply alleges that it was not convenient to receive a letter and that she asked to be emailed. But the statue does not require that the debt collector comply with Plaintiff's preferences. Instead, it simply prohibits communications at unusual times or places which should be known to be inconvenient to the consumer. Plaintiff fails to allege any facts supporting the conclusion that her receipt of the letter constituted a communication "at [an] unusual time or place...which should be known to be inconvenient to the consumer."

*White v. LVNV Funding, LLC.*, No. 2:24-cv-00140-CDS-BNW, 2024 U.S. Dist. LEXIS 16825, at *5-6 (D. Nev. Jan. 30, 2024).

Plaintiff cites to *Duran v. Midland Credit Mgmt.*, No. 15-cv-5940 (RJS), 2016 U.S. Dist. LEXIS 85843, at *11-14 (S.D.N.Y. June 30, 2016) for the position that Defendant should have known once it received the letter from Plaintiff containing his request to be contacted via email that Plaintiff's mailing address was inconvenient. However, Plaintiff mistakenly relies on *Duran* and misses the mark. In *Duran*, the defendant mailed something to plaintiff's correct address. *Id*. Then the defendant mailed something else to plaintiff's brother's address, where plaintiff did not reside. *Id*. The court found that the complaint had sufficiently stated a claim that defendant communicated with the plaintiff in an unusual place because the letter went to the brother's address. *Id*.

That was not the case here. Nothing was sent to a different address other than Plaintiff's correct residence address. Plaintiff did not designate a new address, such as a P.O. Box where communications could be sent. As stated above, Plaintiff asked to only be contacted via email, and, as stated by the court in *Marks* above, Plaintiff did not state that receiving email at his home

3

would be inconvenient or an unusual place, which means his dispute is with the chosen medium of the communication (*i.e.*, mail vs e-mail) and not the place (*e.g.*, his home). *Cf. Olu Omodunbi v. Gordin & Berger, P.C.*, Civil Action No. 17-7553 (ES) (JSA), 2021 U.S. Dist. LEXIS 219323 *17 (D.N.J. Nov. 12, 2021)(emails are a medium of "communication" under 15 U.S.C. § 1692a(2)); CFPB, Debt Collection Practices (Regulation F), Supplement 1 to Part 1006, Official Interpretation 2(d), 85 FR 76734-01, *76895(the Consumer Financial Protection Bureau's Regulation F interpreted the term "any medium" in 15 U.S.C. § 1692a(2) to include "any oral, written, electronic, or other medium. For example, a communication may occur in person or by telephone, audio recording, paper document, mail, email, text message, social media, or other electronic media."); *id*. at* 76896-768967, Official Interpretation 6(b)(1)(providing examples of designations of inconvenience - designating Tuesdays and Thursdays as bad, "I cannot talk now," etc.). Therefore, *Duran* does not support Plaintiff's position.

Plaintiff claims that Defendant is wrong about the exception to the rules, regarding communications at inconvenient or unusual time and place, which allow for a single follow-up communication. Plaintiff claims the single follow-up communication can only relate to further clarification questions about "whether a time or place is inconvenient" (Resp. Br. at 6). However, Plaintiff is mistaken. The Official Commentary and Interpretation are not limited to what can be communicated in that permitted single follow-up communication. *See* Comment for 1006.6 — Communications in Connection with Debt Collection. In this case, the defendant responded with a single communication as permitted by the rules. Thus, Plaintiff's claim must fail.

Plaintiff also states that the January 19 letter was not a validation letter because it was not the first communication made to Plaintiff. However, Plaintiff's January 2, 2024 letter disputed the debt by claiming the balance was too high and he requested validation information about the

4

account "Please send all that you have,..". (ECF No. 8-1.) Defendant properly complied with the FDCPA by providing verification of the amount owed on the account on a separate validation notice for the debt that followed the model[1] validation notice created by the Consumer Financial Protection Bureau. (see CFPB model notice at https://files.consumerfinance.gov/f/documents/cfpb_debt-collection_model-validation-notice_english.pdf ) As a matter of proper statutory interpretation, 15 U.S.C. § 1692c(a)(1) cannot be construed in a manner that prevents a party from satisfying the express statutory requirement for mailing a validation notice of the debt under § 1692g(b), which allows a debt collector to resume collection after providing the requested verification to the consumer. *Marino v. Hoganwillig, PLLC*, 910 F.Supp.2d 492, 496 (W.D. N.Y. 2012); *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1172 (9th Cir. 2006) ("it is obvious that even the least sophisticated debtor would recognize that Mrs. Clark's request for information constituted consent for Hasson, Capital's attorney, to return Mrs. Clark's telephone call in order to provide the specific information she requested.")

Finally, Plaintiff alleges that under the "least sophisticated consumer" standard, the January 19 letter was an attempt to collect a debt. However, in the Seventh Circuit "[c]laims brought under the Fair Debt Collection Practices Act are evaluated under the objective 'unsophisticated consumer' standard," *Gruber v. Creditors' Protection Serv., Inc.*, 742 F.3d 271, 273 (7th Cir. 2014) (citations omitted), as opposed to the "least sophisticated consumer" standard applied in some other circuits. This is because the Seventh Circuit "[does not] believe that the unsophisticated debtor standard should be tied to the very last rung on the sophistication ladder." *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000) (internal quotation marks

---

[1] Use of the model validation notice provides safe harbor for the Rule's content and format requirements. 12 CFR 1006.34(d)(2).

and citation omitted). Though the unsophisticated consumer may be "uniformed, naive, [and] trusting," *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), "she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (internal quotation marks and citations omitted); *see also Pettit*, 211 F.3d at 1060 (noting that the unsophisticated consumer has at least a "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences"). The Seventh Circuit accordingly "disregard[s] unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters." *Id.; Gruber*, 742 F.3d at 274. The unsophisticated consumer "is not a dimwit" and is "reasonable," but he is not a gifted linguist who closely parses a debt collection letter like a patent lawyer construes a patent. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 997 (7th Cir. 2003); *cf. Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996).

Additionally, courts have concluded that a communication that merely seeks or gives information is not "in connection with the collection of a debt." *See Cardona v. FCI Lender Servs., Inc.*, 2017 U.S. Dist. LEXIS 131908, 2017 WL 3531492, at *3 (N.D. Ill. 2017) ("The only reasonable interpretation of the letter, even to an unsophisticated consumer, is that it was intended for informational purposes only, and not an attempt to collect a debt . . . ."); *Buckley v. Bass & Assocs., P.C.,* 2000 U.S. Dist. LEXIS 10306, 2000 WL 1006568, at *2 (N.D. Ill. 2000) ("Certainly a letter that simply requests bankruptcy information is not the type of letter that can be reasonably placed in the category describing a 'communication in connection with the collection of a debt' under the ambit of the FDCPA."); *McCready v. Jacobsen*, 2007 U.S. App. LEXIS 9651, 2007 WL 1224616, at *1 (7th Cir. 2007) (holding that a letter that provided information, by summarizing

6

how a security deposit applied toward unpaid rent and repairs, was not in connection with the collection of a debt).

Here, the January 19th letter was clearly not an attempt to collect a debt but instead sent in response to Plaintiff's January 2 letter requesting the defendant to "Please send all that you have" about the disputed debt. (ECF No. 8-1.) More importantly the January 19th letter does not contain any demand for payment. (See Ex 2.) Although an express demand for payment is not categorically required to qualify a letter as a communication in connection with the collection of a debt, if such explicit payment demand is lacking, that absent demand is a telling indicator that the "animating purpose" of the communication was not to solicit payment of the debt. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384–85 (7th Cir.2010); *Billups v. Retail Merchants Ass'n, Inc.*, 620 F. App'x 211, 214 (5th Cir. 2015); *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 915 (8th Cir. 2014); *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *Flinn v. Michael J. Scott, P.C.*, Civil Action No. 3:14-CV-0701-N, 2014 U.S. Dist. LEXIS 186778 (N.D. Tex. Dec. 2, 2014)(following *Gburek*). *Compare with Schultz v. Sw. Credit Sys., LP,* No. 16-CV-2033-LRR, 2017 U.S. Dist. LEXIS 225161 (N.D. Iowa Oct. 13, 2017)(verification of debt also stating, "Please remit the balance in full to our office upon receipt of this letter," construed as a demand for payment). Here, the statutorily required verification information provided to Plaintiff, upon his request for such information, did not include a demand for payment and should not be construed as being "in connection with the collection of any debt."

## **CONCLUSION**

For all the foregoing reasons, Defendant Resurgent Capital Services, L.P. respectfully requests that the Court dismiss this action for failure to state a claim, and for such other and further relief that the Court deems just and proper under the circumstances.

          Respectfully submitted,
          Attorneys for Defendant
          Resurgent Capital Services LP

*/s/ Nabil G. Foster*
Nabil G. Foster
Alyssa A. Johnson
BARRON & NEWBURGER, P.C.
53 W. Jackson Blvd., # 1205
Chicago, IL 60604
Telephone: 312-767-5750
Facsimile: 312-229-9203
nfoster@bn-lawyers.com
ajohnson@bn-lawyers.com

**CERTIFICATE OF SERVICE**

  I, Nabil G. Foster, an attorney, certify that I shall cause to be served a copy of the **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** upon the following individual(s), by deposit in an U.S. mailbox, postage prepaid, messenger delivery, Federal Express, facsimile transmitted from (312) 229-9203, or electronically via email or the Case Management/Electronic Case Filing System ("ECF") as indicated, on **April 26, 2024** to the following individuals:

| | | |
|---|---|---|
| _X_ | CM/ECF | Michael A. Williams |
| ___ | Facsimile | 1130 S Canal #1240 |
| ___ | Federal Express | Chicago, IL 60607 |
| _X_ | E-Mail | Telephone: (312) 841-9560 |
| ___ | U.S. Mail (before 5 p.m.) | Email: mikewill217@yahoo.com |
| ___ | Messenger (before 4 p.m.) | |

Nabil G. Foster          */s/ Nabil G. Foster*
Alyssa A. Johnson         Nabil G. Foster
BARRON & NEWBURGER, P.C.    One of the Attorneys for Defendant
53 W. Jackson Blvd., # 1205
Chicago, IL 60604
Telephone: 312-767-5750
Facsimile: 312-229-9203
nfoster@bn-lawyers.com
ajohnson@bn-lawyers.com